In the Matter of an Application for the Certification of DORIS COATES, an Alleged Mentally Ill Person.

In the Matter of the Application of DORIS C. COATES for Review of the Proceedings for Certification to the Rochester State Hospital of DORIS C. COATES, an Alleged Mentally Ill Person.

Fourth Department, July 9, 1959.

*Whitbeck & Holloran* (*Vito J. Cassan* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General* (*J. Bruce McDonald* and *Paxton Blair* of counsel), for respondent.

Bastow, J. This appeal presents the question as to the time within which an alleged mentally ill person, or any relative or friend in his behalf, may obtain a rehearing, including the right to a jury trial, as to the issue of mental illness, as provided in section 76 of the Mental Hygiene Law after court certification of such person to a State hospital in accordance with section 74 of the same law.

The latter section provides, among other things, that an alleged mentally ill person may be certified to and confined in

an institution upon an order made by certain named judicial officers upon the certificate of two examining physicians accompanied by a petition therefor. Provision is made for a preliminary hearing which is not here material. In the absence of such a hearing the judge upon finding that the person requires care and treatment may order his commitment for a period not exceeding 60 days for the purpose of observation and treatment. Subdivision 7 of the same section authorizes certain named officials of the institution " At any time prior to the expiration of sixty days " from the date of the commitment order, upon a finding that continued care and treatment is required, to file a certificate to that effect in the office of the County Clerk. " Upon the filing of such certificate, the order theretofore made by the judge *shall become a final order* and such patient shall thereafter remain in such institution . * * * until his discharge in accordance with the provisions of this chapter." (Emphasis supplied.)

Section 76 of the same law provides that if the person certified, or any relative or friend on his behalf, be dissatisfied with *the final order* he may " within thirty days after the making of such order " obtain a rehearing and review of the proceedings. It is mandated that a jury shall be summoned to try the question of the mental illness in the same manner as in the case of proceedings for the appointment of a committee. The verdict of the jury on the question of sanity is determinative.

A brief recital of the facts in this proceeding will point up the ambiguity of the provisions of the two sections when read together. On April 17, 1957 the petitioner was committed to the Rochester State Hospital by an order of a Monroe County Judge. The order in express language provided that it should become final upon the filing of the certificate by the hospital authorities prior to 60 days from the date of the order. Some 16 days after the order was made such a certificate was filed. Approximately 60 days after the order was made petitioner herein sought a rehearing and jury trial as provided in section 76. It was disclosed by her petition that 11 days after the making of the certificate by the hospital she had been released on convalescent status. The relief was denied and the proceeding dismissed. One of the appeals before us is from the order entered therein. The Justice hearing the application held that the period of 30 days, provided for in section 76, commenced to run on the date of the filing of the certificate by the hospital and therefore the proceeding was not timely instituted. (14 Misc 2d 89, 90.)

In the light of these facts the problem may be simply stated.

Section 74 provides that the order becomes final upon the filing of the certificate. Such filing may take place at any time during the period of 60 days. Section 76, however, limits the right of review to a period of 30 days after the making of the final order. Furthermore, it should be emphasized that the statute contains no provision requiring the hospital authorities to give any notice that the certificate has been filed. Moreover, the order of commitment, as required by the statute, directed that all papers be sealed and only exhibited on order of the court. The issue is thus presented as to whether the petitioner herein, who commenced the proceeding for a judicial review and jury trial at the expiration of the period of 60 days given the hospital for observation and treatment may be denied such relief because of the early filing of the certificate without notice to petitioner of such action.

The second appeal before the court is from an order in a proceeding to vacate the commitment order upon the ground that such order, the certificate of the hospital and final order were void in that the statute under which they were made violated both Federal and State Constitutions in that petitioner was deprived of due process. An appeal from the order denying this motion was taken directly to the Court of Appeals. The appeal was dismissed " upon the ground that there is involved a question other than the validity of a statutory provision under the Constitution of the State or of the United States, i.e., a question of statutory construction (N. Y. Const., art. VI, § 7, subd. [2] ; Civ. Prac. Act, § 588, subd. 4)." (*Matter of Coates,* 5 N Y 2d 917, 918.) In view of the conclusions hereinafter reached it may be here said that we find it unnecessary to pass upon the issue of the constitutionality of the statute.

It is a recognized rule of statutory construction that courts will look at " the historical background of the statute to obtain aid in interpreting the statute " (2 Sutherland, Statutory Construction, § 5002). A complete and succinct statement of the statutes upon this subject prior to the enactment of the Consolidated Laws in 1909 is set forth in *Sporza* v. *German Sav. Bank* (192 N. Y. 8, 18). Therein it appears that since 1842 the statutory procedure for the commitment of an alleged insane person to an institution has afforded such person and in later enactments his relatives or friends the absolute right upon demand after his commitment to a jury trial to decide the question of insanity. This was continued in then section 83 of the Insanity Law when the Consolidated Laws were adopted. The period of time within which to commence the proceeding was increased to 30 days as now provided in section 76.

Applying the rule of construction enunciated in *Sporza* v. *German Sav. Bank* (192 N. Y. 8, 24 *supra*) it is sufficient here to inquire whether such trial by jury was in use prior to the adoption of section 2 of article I of the 1894 Constitution. That section provides that " The trial by jury in all cases in which it has been heretofore used shall remain inviolate forever * * *." This section was amended by the Convention of 1938 to provide that " Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever * * *." The purpose of the change was to make clear that jury trials used in new cases since the adoption of the 1894 Constitution did not fall within the constitutional guarantee as amended in 1938. (See II Rev. Record, N. Y. State Const. Convention 1938, p. 1278; Second, Preliminary Report, Advisory Committee on Practice and Procedure of the Temporary Commission on the Courts; N. Y. Legis. Doc., 1958, p. 565, n. No. 29; see, generally, Constitutional Guarantee of Jury Trial, 7 Brooklyn L. Rev., pp. 180–204.) The amendment continued, however, the guarantee of a jury trial in all cases in which it had been used prior to 1894.

It follows that such right in the instant case was a constitutional one because it had been preserved by the 1894 Constitution. The importance of this constitutional right is emphasized by a further consideration of the *Sporza* case (192 N. Y. 8, *supra*). Therein the court passed upon the constitutionality of then section 2323-a of the Code of Civil Procedure (now Civ. Prac. Act, § 1374) which authorized the appointment of a committee of an incompetent person committed to a State hospital without the necessity of a jury trial as required in the case of a person not so committed. (Civ. Prac. Act, § 1364; Code Civ. Pro., § 2327.) The provision was held to be constitutional upon a holding that " the right of a trial by jury is preserved to every person charged with incompetency under the Insanity Law, by his complying with the requirements of that statute " (pp. 21–22). It was further held that the alleged incompetent had waived her right to a jury trial by the failure of herself or her friends to demand it in the insanity proceeding. It followed that a committee might properly be appointed without a jury trial in such proceeding.

The present ambiguity in the statute was caused by an amendment thereto by chapter 665 of the Laws of 1944. Prior thereto there had been a general revision of the Mental Hygiene Law (L. 1933, ch. 395). Insofar as here material there had been no change in the procedure for court commitment of an alleged insane person. In the original proceeding before the committing

Judge or Justice there were statutory provisions for hearings before the Magistrate. But once the order of commitment had been made it became a final order subject only to the right of of review pursuant to section 76 with the ensuing jury trial. The 1944 amendment (ch. 655) for the first time incorporated the requirement in subdivision 4 of section 74 that the commitment order should direct the confinement of the person for a period not exceeding 60 days for observation and treatment. At the same time subdivision 7 of the same section was amended to place with the hospital authorities the power to file, prior to the expiration of 60 days, the certificate that continued care and observation were needed. If such certificate was filed then the order theretofore made became the final order.

The confusion arises because section 76 was not changed and continues to read that if the patient, his relatives or friends are dissatisfied '' with the final order '' of the judge the right is given '' within thirty days after the making of such order '' to have a rehearing and jury trial. In *Matter of Gurland* (286 App. Div. 704, appeal dismissed 309 N. Y. 969) it was held that the institution was entitled to the full period of 60 days to observe and treat and a review proceeding seeking a jury trial was prematurely commenced when it appeared that the certificate making the order final had not been filed.

In sum, a situation is presented where an alleged mentally ill person is confined for a temporary period not to exceed 60 days. This confinement may become final on any one of these 60 days if the certificate is filed by the institution. On that day, according to the contention of the State, the short Statute of Limitation of 30 days commences to run against the right of review and jury trial. But the statute contains no provision for notice to the committing judge, the patient or any other person. It is a strictly ex parte act. Moreover, as we have seen, the general scheme of the statute requires the sealing by the County Clerk of some if not all of the papers. It is doubtful that the cautious County Clerk, in the absence of a court order, would reveal to the patient or his relative or friend whether the certificate had been filed. Once the short Statute of Limitations has run the committed person is not only permanently confined but under the holding in *Sporza* v. *German Sav. Bank* (192 N. Y. 8, *supra*) will have been deemed to have waived a jury trial in connection with the appointment of a committee of his person and property. The Attorney-General argues, however, that no harm results because the remedy of habeas corpus is always available to one in custody (Mental Hygiene Law, § 204). We cannot agree with this contention for two

reasons. First, as heretofore stated, one so in custody has a constitutional right to a jury trial of which he may not be deprived by anything less than due process, which in this case would require adequate notice that the commitment order has become final if an attempt is made to shorten the statutory period for a jury trial. Second, a committee should not be appointed and a committed person deprived of his property upon a finding that he has waived a jury trial when in fact his right thereto might have been lost in the course of a guessing game as to whether an administrative official had filed a certificate at some time prior to the end of the period of 60 days.

It is unnecessary, however, to pass upon appellant's contention that these statutory provisions are unconstitutional. In *People ex rel. Morriale* v. *Branham* (291 N. Y. 312) the court considered a factual situation in many ways similar to the instant case. Therein it appeared that relator had been sentenced to prison for six years. During that period he was transferred pursuant to statutory authority to an institution for mental defectives. When his fixed term of imprisonment expired the superintendent of the institution acting pursuant to sections 460 and 440 of the Correction Law applied to a Judge of a court of record for an order authorizing the retention of relator after the expiration of his sentence. Qualified examiners were designated and upon their certificate an order was made committing relator to the institution " there to be dealt with according to law." All of this was done without notice to the prisoner and none was required by the statute. In holding that relator was entitled to his discharge the court said (p. 317): " An *ex parte* judicial decision that a prisoner otherwise entitled to his liberty shall continue to be retained in custody until, at some future time, he may be discharged by his custodian or may secure his release by habeas corpus proceedings, would be contrary to the traditions of the common law and perhaps would constitute a violation of rights guaranteed by the Constitution. A statute which authorizes a judicial order or decree for a person's imprisonment or restraint must if possible be given a construction which will not offend constitutional guarantees of liberty or offend fundamental concepts of the common law. Unless the statute provides expressly or by necessary implication that an adjudication may be made without notice to the person whose detention or restraint is sought, we may reasonably find implicit in the statute a direction that the judicial decision and decree shall be made only in accordance with due process of law after notice and opportunity to be heard."

In implementing this rule of law in the case before us it is not necessary to make a flat holding that this administrative body — the State hospital — after exercising a judicial function in deciding that the temporary confinement of an alleged mentally ill person shall become final must give notice thereof to the patient or such other persons as might seek a judicial review of such administrative determination. It is sufficient to hold, as we do, that in the absence of such notice the persons given the right to seek the judicial review provided by section 76 of the Mental Hygiene Law should not be circumscribed by a narrow interpretation of the statutory provisions. Inasmuch as the institution is entitled to the full period of 60 days to observe and treat and in view of the further fact that the institution may act at any time during the period without notice of its action it is concluded that the period of 30 days within which a judicial review may be sought does not commence to run until the expiration of the 60 days from the date of the making of the commitment order. Applying this rule to the facts herein it is found that the application for a jury trial as to the issue of mental illness was timely inasmuch as it was commenced within the period of 90 days after the making of the commitment order. The request for a jury trial should have been granted.

It should be pointed out in passing that the institution, if it so desired, might be able to commence the running of the period of 30 days by notice to the appropriate parties. We do not undertake, however, to formulate a rule as to who the appropriate parties might be upon whom such notice should be served after the finding of mental illness of the patient by the filing of the certificate.

The second appeal, as has been stated, was from an order made in a proceeding which challenged the constitutionality of these statutory provisions. The Justice reached the correct conclusion that the motion should be denied. In so doing the constitutionality of the statutory provisions was passed upon. In affirming the order therein entered it is unnecessary to embrace such a determination or to adopt in its entirety the decision.

Lastly, we have for decision a motion to dismiss these appeals made after the argument thereof although raised in respondent's brief. It is alleged in the moving papers that appellant was discharged from custody on May 21, 1958. This discharge took place 12 days after the direct appeal to the Court of Appeals, heretofore described, had been argued in that court. (5 N Y 2d 917.) It is not alleged that that court was informed of the

action taken and no reason is assigned for the long delay in taking affirmative action to have the appeals dismissed.

It is recognized that an appellate court usually declines to decide questions which have become moot or academic because of a change in circumstances affecting the case after the decision below. (*Matter of Adirondack League Club* v. *Black Riv. Regulating Dist.*, 301 N. Y. 219, 222; *Delavan* v. *New York, New Haven & Hartford R.R. Co.*, 216 N. Y. 359, 362.) On occasion appellate courts refrain from taking such action where " the question is one of major importance and, because it will arise again and again, one that invites immediate decision." (*Matter of Rosenbluth* v. *Finkelstein*, 300 N. Y. 402, 404; *Matter of Glenram Wine & Liq. Corp.* v. *O'Connell*, 295 N. Y. 336, 340.) We find the issues presented in these appeals to fall within this exception to the general rule. Furthermore, we here decide that it was error to deny appellant a jury trial and thereby she was deprived of her constitutional right to a jury trial which might have wiped out an administrative determination that made final an adjudication that appellant was mentally ill within the meaning of the Mental Hygiene Law. Although now discharged this adjudication if incorrect should not permanently stand upon the record.

The motion to dismiss the appeals should be denied. The order of September 11, 1957 should be reversed and the application of petitioner granted, with costs. The order of March 28, 1958 should be affirmed, without costs.

All concur. Present— McCURN, P. J., KIMBALL, WILLIAMS, BASTOW and HALPERN, JJ.

Order [entered Sept. 11, 1957] reversed, with $10 costs and disbursements and application granted, with $10 costs.

Order [entered March 28, 1958] affirmed, without costs of this appeal to either party.